**No. 26-5346**

---

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

————————————

**OUTMEMPHIS,**

*Plaintiff-Appellee,*

**v.**

**JONATHAN THOMAS SKRMETTI,**
**in his official capacity as the Attorney General and Reporter of Tennessee,**
*Defendant-Appellant.*

————————————

**On appeal from the United States District Court
for the Western District of Tennessee
No. 3:23-cv-2670**

————————————

**DEFENDANT-APPELLANT'S OPENING BRIEF**

————————————

| | |
|---|---|
| **JONATHAN SKRMETTI**<br>*Attorney General and Reporter* | **CODY N. BRANDON**<br>*Deputy Attorney General* |
| **MADELINE W. CLARK**<br>*Solicitor General* | **Office of the Tennessee Attorney General and Reporter**<br>**P.O. Box 20207**<br>**Nashville, TN 37202**<br>**Cody.Brandon@ag.tn.gov**<br>**(615) 532-7400**<br>*Counsel for General Skrmetti* |

i

## TABLE OF CONTENTS

JURISDICTION.................................................................................................1

ISSUES PRESENTED FOR REVIEW ...............................................................3

INTRODUCTION ..............................................................................................4

STATEMENT OF THE CASE............................................................................4

SUMMARY OF THE ARGUMENT ..................................................................8

STANDARD OF REVIEW ...............................................................................10

ARGUMENT ....................................................................................................10

I.    OUTMemphis Lacks Standing to Sue General Skrmetti because the Attorney General Does Not Enforce the Challenged Statute. ........................14

II.   General Skrmetti Is Entitled to Sovereign Immunity under *Ex parte Young* because He Does Not Enforce the Aggravated Prostitution Statute. ..................................................................................................22

CONCLUSION .................................................................................................28

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alden v. Maine*,
527 U.S. 706 (1999).................................................................................23

*Boler v. Earley*,
865 F.3d 391 (6th Cir. 2017) ...................................................................23

*Cartwright v. Garner*,
751 F.3d 752 (6th Cir. 2014) ...................................................................19

*Children's Healthcare is a Legal Duty v. Deters*,
92 F.3d 1412 (6th Cir. 1996) .............................................................22, 25

*Christian Healthcare Centers, Inc. v. Nessel*,
117 F.4th 826 (6th Cir. 2024) ..................................................................19

*Clapper v. Amnesty Intn'l USA*,
568 U.S. 398 (2013)..................................................................................20

*Federal Election Comm'n v. Cruz*,
596 U.S. 289 (2022)............................................................................14, 15

*Friends of George's, Inc. v. Mulroy*,
108 F.4th 431 (6th Cir. 2024) ........................................................15, 19, 20

*Goddard v. Sevier Cnty.*,
623 S.W.2d 917 (Tenn. 1981) ..................................................................18

*Gonzalez v. Thaler*,
565 U.S. 134 (2012)....................................................................................1

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................14, 18

*McKay v. State*,
No. W2023-01207-CCA-R9-CO, 2024 WL 4404318 (Tenn. Crim.
App. Oct. 4, 2024) .....................................................................................12

ii

*McNutt v. Gen. Motors Acceptance Corp. of Ind.*,
   298 U.S. 178 (1936)..............................................................................19

*Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tenn.*,
   63 F.4th 510 (6th Cir. 2023) ............................................................23, 24

*Right to Life of Mich. v. Whitmer*,
   No. 25-1973, 2026 WL 1471210 (6th Cir. May 26, 2026) ................................16

*Rosenwald v. Kimberly-Clark Corp.*,
   152 F.4th 1167 (9th Cir. 2025) ..................................................................19

*Shields v. Pro. Bureau of Collections of Md., Inc.*,
   55 F.4th 823 (10th Cir. 2022) ...................................................................19

*Simon v. Eastern Kentucky Welfare Rights Org.*,
   426 U.S. 26 (1976).............................................................................15, 17

*Snoeck v. Brussa*,
   153 F.3d 984 (9th Cir. 1998) ....................................................................26

*Southern Pac. Transp. Co. v. Brown*,
   651 F.2d 613 (9th Cir. 1980) ....................................................................27

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)................................................................................19

*State v. Finch*,
   465 S.W.3d 584 (Tenn. Crim. App. 2013) ......................................................17

*State v. Spurgeon*,
   47 S.W. 235 (Tenn. 1897)........................................................................12

*State v. Superior Oil, Inc.*,
   875 S.W.2d 658 (Tenn. 1994) ....................................................................11

*Texas Alliance for Retired Americans v. Scott*,
   28 F.4th 669 (5th Cir. 2022) .....................................................................27

*Town of Chester, N.Y. v. Lareo Estates, Inc.*,
   581 U.S. 433 (2017)................................................................................15

*Universal Life Church Monastery Storehouse v. Nabors*,
  35 F.4th 1021 (6th Cir. 2022) ...........................................................*passim*

*Va. Off. for Prot. & Advoc. v. Stewart*,
  563 U.S. 247 (2011) ...........................................................................24

*Vonderhaar v. Village of Evendale, Ohio*,
  906 F.3d 397 (6th Cir. 2018) ............................................................21

*Whole Woman's Health v. Jackson*,
  595 U.S. 30 (2021).............................................................22, 24, 26, 27

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989).............................................................................23

*Ex Parte Young*,
  209 U.S. 123 (1908).................................................................23, 24, 25

**Statutes**

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1331 ...................................................................................1

Ky. Rev. Stat. Ann. § 529.090 ..............................................................6

Tenn. Code Ann. § 8-6-109 .................................................................11

Tenn. Code Ann. § 8-6-110 .................................................................11

Tenn. Code Ann. § 8-6-112 .................................................................12

Tenn. Code Ann. § 8-6-202 .................................................................11

Tenn. Code Ann. § 8-6-303 .................................................................12

Tenn. Code Ann. § 8-7-103 .......................................................11, 16, 21

Tenn. Code Ann. § 8-7-106 ...............................................12, 13, 17, 20

Tenn. Code Ann. § 16-2-506 ...............................................................13

Tenn. Code Ann. § 29-21-101 .............................................................11

Tenn. Code Ann. § 39-13-101 .............................................................13

iv

Tenn. Code Ann. § 39-13-512 ...............................................................................5

Tenn. Code Ann. § 39-13-513 ...............................................................................5

Tenn. Code Ann. § 39-13-514 ...............................................................................5

Tenn. Code Ann. § 39-13-515 ...............................................................................5

Tenn. Code Ann. § 39-13-516 ...............................................................................5

Tenn. Code Ann. § 40-30-114 .............................................................................11

Tenn. Code Ann. § 40-35-111 ...............................................................................5

1991 Tenn. Pub. Acts c. 281 ..................................................................................5

2024 Tenn. Pub. Acts c. 545 ..................................................................................5

**Other Authorities**

Andy D. Bennett, *The History of the Tennessee Attorney General's
   Office*, 36-APR Tenn. B. J. 12, 13 (Apr. 2000) ...................................................11

Fed. R. App. P. 4 ....................................................................................................1

Tenn. Const. art. VI, § 5................................................................................10, 12, 21

U.S. Const. art. III, § 2 ........................................................................................14

## JURISDICTION

OUTMemphis brought claims under the Civil Rights Act, the Americans with Disabilities Act, and the Rehabilitation Act to challenge the validity of a Tennessee statute. Complaint, R.62, PageID# 452-561. The district court had limited subject-matter jurisdiction because this case "aris[es] under" federal laws. 28 U.S.C. § 1331.

The district court denied Defendant Skrmetti's motion to dismiss on March 31, 2026. Order, R.171, PageID# 2092. In his motion, General Skrmetti asserted sovereign immunity from suit and argued OUTMemphis lacks standing against him. Motion, R.66-1, PageID# 595-96, 604. The district court, however, denied sovereign immunity and ruled that Plaintiff, OUTMemphis, had standing to sue. Order, R. 171, PageID# 2041, 2043. General Skrmetti filed a timely notice of appeal on April 20, 2026. Notice, R.177; *see* Fed. R. App. P. 4(a)(1)(A).

This Court has "statutory jurisdiction over the district court's denial of immunity" as a "final" decision under the collateral order doctrine. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1030 (6th Cir. 2022); 28 U.S.C. § 1291. This Court also has jurisdiction to review "any other issue that [it] must examine to ensure meaningful review of the collateral order." *Nabors*, 35 F.4th at 1031. Standing is a jurisdictional issue that may be raised "at any point in the litigation," and this Court is "obligated" to address it even "*sua sponte*." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). General Skrmetti's standing defense also

1

mirrors his immunity defense. *See infra* Arg.  So this Court has jurisdiction to review

standing in this interlocutory appeal.  *Nabors*, 35 F.4th at 1031.

**ISSUES PRESENTED FOR REVIEW**

Tennessee's Attorney General has no power to prosecute the aggravated prostitution statute OUTMemphis challenges—only the power to ask the Tennessee Supreme Court to appoint a pro tem prosecutor if or when an elected prosecutor completely abandons enforcement, which the Attorney General has never exercised. The issues presented are:

I

Did the district court err in ruling that OUTMemphis has standing to sue the Attorney General to enjoin prosecution of aggravated prostitution?

II

Did the district court err in denying sovereign immunity to the Attorney General and ruling that OUTMemphis may sue him under *Ex parte Young* to enjoin prosecutions of aggravated prostitution?

**INTRODUCTION**

A plaintiff seeking an anti-enforcement injunction may not sue a state officer who does not enforce the challenged statute.  Under both the standing doctrine and the *Ex parte Young* exception to sovereign immunity, the basic instruction is the same: a plaintiff must explain what the officer "has done, is doing, or might do to injure" him.  *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022).  Without that, there is no case.

And that rule resolves *this* case.  OUTMemphis sued Attorney General Jonathan Skrmetti to enjoin enforcement of aggravated prostitution—a law General Skrmetti does not enforce.  In its ten-count, hundred-page, 436-paragraph complaint, OUTMemphis hardly mentions General Skrmetti.  More importantly, not once did OUTMemphis explain how General Skrmetti was prosecuting aggravated prostitution at all, let alone in a manner that violated OUTMemphis's rights under Title II of the ADA.  That is fatal both to OUTMemphis's standing to sue and to its invocation of the *Ex parte Young* exception.  This Court should reverse.

**STATEMENT OF THE CASE**

OUTMemphis, four individual plaintiffs, and (later) the Department of Justice brought two lawsuits challenging Tennessee's aggravated prostitution statute and related sex offender registration obligations.  In the two and a half years since their inception, the cases slowly dropped baggage as DOJ voluntarily dismissed its suit,

4

Vol. Dismissal, R.151; the General Assembly amended some of the challenged statutes, 2024 Tenn. Pub. Acts c. 545; and, finally, the district court dismissed most of OUTMemphis's remaining claims on the merits, Order, R.171, PageID# 2074-77, 2086-91.

All that remains—and the only subject of this appeal—is OUTMemphis's claim against General Skrmetti under Title II of the ADA.  Order, R.171, PageID# 2092.  That claim alleged that "enforcement of the Aggravated Prostitution statute" results in prostitutes with HIV "being subjected to discrimination by a public entity by reason of their disability."  Compl., R.62, PageID# 540, ¶ 371.

Aggravated prostitution is one of a range of sexual crimes.  Prostitution, prostitution near a church or school, patronization of prostitution, promoting prostitution, and promoting prostitution of a minor all carry penalties ranging from six months to 60 years in prison.  Tenn. Code Ann. §§ 39-13-512, -513, -514, -515; *Id*. § 40-35-111.  Aggravated prostitution—prostituting while "knowing that [one] is infected with HIV"—is punishable by three to fifteen years.  Tenn. Code Ann. §§ 39-13-516, 40-35-111(b)(3).  The law has been unchanged since its enactment in 1991, 1991 Tenn. Pub. Acts c. 281, § 2, when HIV was "invariably fatal."  Compl., R.62, PageID# 464, ¶ 31. "[P]ublic health officials" at the time predicted that HIV-positive prostitutes "would be significant drivers of the [AIDS] epidemic."  Compl., R.62, PageID# 474, ¶ 70.  And the federal government conditioned AIDS relief

5

grants on the adequacy of criminal laws to curb knowing exposure to HIV. Compl., R.62, PageID# 475, ¶ 74. Sponsors of the aggravated prostitution statute accordingly believed it would help address "the growing problem of HIV" by punishing those "who were aware they had HIV and knowingly continued" to prostitute. Compl., R.62, PageID# 475, ¶¶ 76-77. Like other States, Tennessee thus levied a higher sentence for that knowing conduct. *See, e.g.,* Ky. Rev. Stat. Ann. § 529.090(2). That, OUTMemphis claimed, violated Title II's bar on disability discrimination.

General Skrmetti moved to dismiss that claim against him based on OUTMemphis's lack of standing and sovereign immunity. Motion, R.66-1, PageID# 594-96, 602-04. On standing, General Skrmetti argued that he could not prosecute aggravated prostitution and thus OUTMemphis faced no threat from him, could not trace enforcement to him, and could not redress its alleged injuries through an order against him. *Id.*, PageID# 602-04. Similarly, on sovereign immunity, General Skrmetti argued that because he did not have "the right and the power to enforce" the aggravated prostitution statute, *Ex parte Young*'s exception to sovereign immunity does not apply. *Id.*, PageID# 594-96 (quoting *Ex Parte Young*, 209 U.S. 123, 161 (1908)).

The District Court disagreed based on the possibility that, under Tennessee's processes for ensuring prosecutor's offices are not vacant or abandoned, General Skrmetti might someday ask the Tennessee Supreme Court to appoint a pro tem

6

prosecutor to enforce the aggravated prostitution statute. On standing, the District Court held that those processes "create a reasonable risk that he may take prosecutorial action under the challenged statute." Order, R.171, PageID# 2038. The District Court found that OUTMemphis's claim, in response to a notice of supplemental authority, that the 30th Judicial District Attorney had just settled with the United States[1] gave it "reason to believe that Skrmetti will follow this process and take action to enforce the aggravated prostitution statute." Order, R.171, PageID# 2039. The District Court held that the settlement "presents a 'credible threat' that Skrmetti will take prosecutorial action." *Id*. PageID# 2041.

The District Court relied on the same reasoning to conclude that General Skrmetti is not entitled to sovereign immunity under *Ex Parte Young*.[2] The District Court held that General Skrmetti's "active role" in the pro tem appointment process "creates a reasonable risk of prosecutorial action by the attorney general." *Id*. PageID# 2043. The District Court thought General Skrmetti "has enforcement

---

[1] According to OUTMemphis, in May 2024, "the Shelby County District Attorney General's Office ha[d] just announced that it will cease all Aggravated Prostitution prosecutions pursuant to a settlement agreement with the United States of America." Supp., R.100, PageID# 995.

[2] In addition to invoking *Ex parte Young*, OUTMemphis argued it could circumvent General Skrmetti's immunity via abrogation under Title II. Resp., R.67, PageID# 653. The District Court determined it "need not analyze" that argument because General Skrmetti could be sued under *Ex parte Young*. Order, R.171, PageID# 2043.

7

power via the trigger statute, and he has not suggested that he will refrain from enforcing the Aggravated Prostitution statute." *Id*.

Based on those rulings, the District Court denied General Skrmetti's motion to dismiss. Order, R.171. General Skrmetti filed a timely notice of appeal. Notice, R.177.

## SUMMARY OF THE ARGUMENT

The District Court erred in denying General Skrmetti's motion to dismiss because of one irrefutable fact: General Skrmetti does not—and cannot—prosecute any violation of the aggravated prostitution Statute. OUTMemphis thus lacks standing to ask a court to order him to stop prosecuting, and OUTMemphis cannot circumvent his sovereign immunity under *Ex parte Young*. Under either doctrine, the complaint should have been dismissed.

Standing is a core component of Article III's limits on judicial power. To invoke that power, a plaintiff must show injury in fact, traceable to a defendant, that can be redressed by the requested relief. OUTMemphis did not do that here. OUTMemphis's complaint challenged the validity of the aggravated prostitution statute. But it never showed how General Skrmetti could—let alone did—arrest or prosecute anyone for violating it. So OUTMemphis provided no basis for a federal court to require General Skrmetti to refrain from taking some prosecution. The complaint failed every part of the test for standing.

8

The District Court disagreed by adopting a theory nowhere in OUTMemphis's Complaint. The District Court reasoned that because Tennessee law lets General Skrmetti ask the Tennessee Supreme Court to appoint a pro tem prosecutor when an elected district attorney abandons his post, (1) General Skrmetti could hypothetically—at some unknown point in the future—request such a pro tem, (2) the Tennessee Supreme Court would agree, and (3) the pro tem would prosecute some unknown person for aggravated prostitution.

That reasoning is wrong in four ways. First, this Court already rejected the same theory in *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1032 (6th Cir. 2022). Second, the complaint lacks any allegations to establish that any pro tem appointment was imminent. Third, no pro tem appointment is in fact imminent even accounting for evidence beyond the complaint. Fourth, OUTMemphis still cannot explain how enjoining General Skrmetti from requesting a pro tem would redress the fact that aggravated prostitution will go on being prosecuted. OUTMemphis lacks standing to sue General Skrmetti.

For similar reasons, the District Court erred by allowing OUTMemphis to avoid General Skrmetti's sovereign immunity under *Ex parte Young*. That narrow exception allows suits only when a state official has enforced or threatened to enforce an allegedly unconstitutional statute against the plaintiff. General Skrmetti has done neither. And again, the unpleaded theory about pro tem appointments does

9

not help. Nothing about requesting appointment of a pro tem itself violates federal law, and *Ex parte Young* lifts the shield of immunity only for specific unlawful actions. Plaintiff's theory depends on a series of hypotheticals too attenuated to make any prosecution imminent. OUTMemphis cannot use *Ex parte Young* to circumvent General Skrmetti's immunity.

At bottom, while OUTMemphis brought this suit to challenge the aggravated prostitution statute, by suing General Skrmetti it did not sue an adverse party who enforces it. The District Court therefore erred by not dismissing OUTMemphis's Title II claim against General Skrmetti.

## STANDARD OF REVIEW

This Court reviews the denial of sovereign immunity and questions of standing *de novo*. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022). Because this appeal is from the denial of a motion to dismiss, this Court accepts all well-pleaded factual allegations in the complaint. *Id*.

## ARGUMENT

Under Tennessee's constitutional system, the Tennessee Attorney General and Reporter is not the only "Attorney for the State." Tenn. Const. art. VI, § 5. The Attorney General is appointed by the Tennessee Supreme Court, and the other State attorneys—local District Attorneys—are elected by the voters of Tennessee's 32 criminal judicial districts. *Id*.

10

Since 1835, Tennessee's constitution and laws have delicately balanced power between the State's attorneys. Andy D. Bennett, *The History of the Tennessee Attorney General's Office*, 36-APR Tenn. B. J. 12, 13 (Apr. 2000). The Attorney General directs all "civil" litigation for the State, handles "both civil and criminal" appeals in Tennessee courts, represents the State in any proceeding in federal courts, "attend[s] to all legal business" related to the State treasury, advises State officials in the discharge of their duties, publishes written opinions, reports the decisions of Tennessee's appellate courts, and defends the validity of Tennessee laws. Tenn. Code Ann. §§ 8-6-109, -110, -202.

District Attorneys, on the other hand, prosecute "all violations of the state criminal statutes." Tenn. Code Ann. § 8-7-103. They are "answerable to no superior and ha[ve] virtually unbridled discretion" in criminal matters—"[i]n a very real sense" occupying "the most powerful office in Tennessee." *State v. Superior Oil, Inc.*, 875 S.W.2d 658, 660 (Tenn. 1994).

As a result, the Attorney General's participation in "criminal" proceedings is circumscribed. The Attorney General handles appeals from District Attorneys' prosecutions and directs trial proceedings in certain quasi-criminal post-conviction matters. Tenn. Code Ann. §§ 29-21-101 (petitions for writ of habeas corpus), 40-30-114(c) (petitions for "collateral review" of a capital conviction or sentence). But those duties do not "requir[e] the attorney general and reporter to approve of,

11

participate in, or supervise actions instituted by the various district attorneys." Tenn. Code Ann. § 8-6-303. Under only strict conditions may the Attorney General "conduct an investigation" and "initiate [a] criminal prosecution": when a judicial official or District Attorney may have violated a state criminal law and either (A) the local District Attorney has a conflict or (B) the violation is of Tennessee's nepotism law. Tenn. Code Ann. § 8-6-112(a).

The boundaries dividing authority between the Attorney General and District Attorneys matter. They have been sharpened by nearly two centuries of legislation, practice, and precedent. *See State v. Spurgeon*, 47 S.W. 235, 236 (Tenn. 1897). And the last time the General Assembly reallocated even a sliver of authority over state post-conviction proceedings, it spawned a conflict between the Attorney General and District Attorneys that Tennessee courts had to resolve. *McKay v. State*, No. W2023-01207-CCA-R9-CO, 2024 WL 4404318, at *1-4 (Tenn. Crim. App. Oct. 4, 2024), *vacated in party by* 706 S.W.3d 338, 339 (Tenn. 2025).

Indeed, Tennessee courts play their own unique role in supervising the State's attorneys. When a District Attorney "fails or refuses to attend and prosecute," a court has power to appoint a pro tem replacement. Tenn. Const. art. VI, § 5; Tenn. Code Ann. § 8-7-106(a)(1). And in the extreme case where a District Attorney "peremptorily and categorically refuses to prosecute all instances of a criminal offense without regard to facts or circumstances," the Attorney General may ask the

12

Supreme Court to appoint that pro tem.  Tenn. Code Ann. § 8-7-106(a)(2).  The Supreme Court only appoints a pro tem when it "finds" that the District Attorney "has refused."  *Id*.  And then it appoints "some other attorney . . . for the sole purpose of prosecuting persons accused of committing that offense."  *Id*.

The District Court let OUTMemphis's challenge to the aggravated prostitution statute cling to life based on this single provision.  District Attorneys prosecute aggravated prostitution as an "offense against the person."  *See* Tenn. Code Ann. §§ 39-13-101 to -1004.  Even though a District Attorney may "specially appoint" the Attorney General to prosecute some specific criminal proceedings, the Attorney General may not "undertake[]" any "prosecution for an offense against the person," including aggravated prostitution.  Tenn. Code Ann. § 8-7-106(b)(4).  Most convictions for aggravated prostitution come from Shelby County, Compl., R.62, PageID# 507, ¶ 218, exclusively within the jurisdiction of the 30th Judicial District Attorney's Office, Tenn. Code Ann. § 16-2-506(30)(A).

Yet OUTMemphis did not sue any District Attorney.  It sued General Skrmetti instead—but hardly mentioned him in its complaint.  It states his name, address, and title; once says he defends the constitutionality of Tennessee law; and everywhere else refers to him only to say who OUTMemphis is suing.  R.62, PageID# 452, 460, 539-44, 546-51. Never did it explain how General Skrmetti was prosecuting aggravated prostitution.  But the District Court refused to dismiss the case because

13

Tennessee law allows the Attorney General to ask the Supreme Court to appoint a pro tem when an elected district attorney abandons his post.

That is not enough to sustain this lawsuit against General Skrmetti. It is not enough to show standing to sue him, and it is not enough to deny him sovereign immunity under *Ex parte Young*.

## I.      OUTMemphis Lacks Standing to Sue General Skrmetti because the Attorney General Does Not Enforce the Challenged Statute.

OUTMemphis lacks standing to sue General Skrmetti—as this Court has held and as the District Court itself recognized, "Tennessee's attorney general does not have authority to initiate criminal prosecutions; rather, that power belongs to local district attorneys." Order, R. 171, PageID# 2038; *see Nabors*, 35 F.4th at 1042. OUTMemphis, therefore, cannot establish a credible threat of prosecution to demonstrate an injury in fact. The District Court's contrary conclusion should be reversed. The mere possibility that General Skrmetti might ask the Tennessee Supreme Court to appoint a pro tem prosecutor to pursue aggravated prostitution charges, that the Tennessee Supreme Court might agree, and that the pro tem prosecutor might prosecute someone does not give OUTMemphis standing to seek an anti-enforcement injunction against General Skrmetti.

Federal courts may only decide "Cases" and "Controversies." U.S. Const. art. III, § 2; *Federal Election Comm'n v. Cruz*, 596 U.S. 289, 295 (2022). The standing doctrine is a "core component" of that jurisdictional limit. *Lujan v. Defenders of*

14

*Wildlife*, 504 U.S. 555, 560 (1992).  So to invoke a federal court's power, a plaintiff must show "(1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief."  *Cruz*, 596 U.S. at 296.  And it "must demonstrate standing for . . . each form of relief that is sought." *Town of Chester, N.Y. v. Lareo Estates, Inc.*, 581 U.S. 433, 439 (2017).

Here, that means OUTMemphis must prove "an imminent . . . injury" that is "real, immediate, and direct."  *Friends of George's, Inc. v. Mulroy*, 108 F.4th 431, 435 (6th Cir. 2024) (internal quotations omitted).  That requires "a *certainly impending* threat of prosecution."  *Id*. (internal quotations omitted) (emphasis in original).  And the injury cannot "result[] from the independent action of some third party not before the court."  *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 42 (1976).

OUTMemphis did not do that.  OUTMemphis originally sued several defendants and collectively alleged that "Defendants' maintenance, administration, and enforcement of the Aggravated Prostitution statute" violates Title II of the ADA.  Compl., R.62, PageID# 540 (¶ 371).  But the complaint never alleges facts showing that *General Skrmetti* enforces the aggravated prostitution statute.  And OUTMemphis admits that aggravated prostitution is part of Tennessee's criminal code, *id*. ¶ 88, which is enforced by "police officers" and prosecutors—mostly "the Memphis Police Department[]" and

15

the District Attorney for Tennessee's 30th Judicial District.  *Id*. PageID# 507, 518, 523, 525, 527 (¶¶ 218-19, 265, 285, 295, 304, 306).

Precedent therefore dictates that OUTMemphis lacks standing.  To get "an anti-enforcement injunction (or related declaratory relief)" against General Skrmetti, OUTMemphis had to show that he "can and may take some enforcement action against" it.  *Nabors*, 35 F.4th at 1032; *see Right to Life of Mich. v. Whitmer*, No. 25-1973, 2026 WL 1471210, at *2 (6th Cir. May 26, 2026).  But "the Tennessee Attorney General does not have the power to initiate criminal prosecutions." *Nabors*, 35 F.4th at 1032.  That power lies with District Attorneys.  *Id*.; Tenn. Code Ann. § 8-7-103(1).  "So there is no imminent prosecution that a federal court could coerce *the Attorney General* to refrain from undertaking."  *Nabors*, 35 F.4th at 1032. General Skrmetti's duty to defend state statutes "does not suffice for plaintiffs to secure an anti-enforcement injunction."  *Id*.

All this should have disposed of OUTMemphis's claim against General Skrmetti, but the District Court moved past *Nabors* and took up a theory not supported by precedent or the complaint.  The District Court reasoned that General Skrmetti's ability to request a pro tem appointment from the Tennessee Supreme Court constitutes "enforcement" authority for the aggravated prostitution Statute. Order, R.171, PageID# 2038.  Because *Nabors* "did not address" that statute, the

16

District Court determined that it could reach the opposite result.  Order, R.171, PageID# 2039-40.  That was wrong in four ways.

**1.** *Nabors* already held that Tennessee's pro tem appointment statutes do not extend standing beyond local police and prosecutors.  For an injury to be traceable, it cannot "result[] from the independent action of some third party not before the court."  *Simon*, 426 U.S. at 41-42.  So it made no difference in *Nabors* that when a District Attorney refuses to prosecute, a court can appoint a pro tem "to initiate the prosecution."  *Nabors*, 35 F.4th at 1032.  "The Attorney General never steps in" as the prosecutor and still "does not have the power to initiate criminal prosecutions." *Id*.  It is still "the *district* attorneys general"—including the appointed pro tem— "that actually initiate criminal enforcement proceedings."  *Id*.  There is no basis for this case to come out differently than *Nabors*.

The District Court's only reason for distinguishing *Nabors* was inaccurate. The District Court said that "the *Nabors* court analyzed a different constitutional provision."  Order, R.171, PageID# 2039.  But the pro tem appointment statute on which OUTMemphis relied here effectuates the *same* constitutional provision *Nabors* addressed.  *Compare Nabors*, 35 F.4th at 1032 (citing Tenn. Const. art. VI, § 5), *with* Tenn. Code Ann. § 8-7-106.  The pro tem statute merely "expands on the power" enumerated in the Tennessee Constitution.  *State v. Finch*, 465 S.W.3d 584, 595 (Tenn. Crim. App. 2013), *overruled on other grounds by State v. Menke*, 590

17

S.W.3d 455, 468 n.11 (Tenn. 2019); *see Goddard v. Sevier Cnty.*, 623 S.W.2d 917, 919 (Tenn. 1981).  So the District Court had no reason to depart from *Nabors*.

**2.** Regardless, the Complaint alleges no facts to show that a theoretical pro tem request constitutes an injury in fact.  Article III requires more than "conjectural or hypothetical" injuries—they must be "actual or imminent."  *Lujan*, 504 U.S. at 560.  And plaintiffs "need[] to allege" that actual injury in the complaint.  *Nabors*, 35 F.4th at 1031; *see id*. at 1031-34 (examining plaintiffs' "allegations" throughout).  OUTMemphis's complaint does not allege anything about General Skrmetti requesting a pro tem.  Instead, OUTMemphis first raised the pro tem theory in response to the motion to dismiss and in a response to a notice of supplemental authority, speculating that General Skrmetti could soon request a pro tem after the District Attorney settled with the United States.[3]  Resp., R.67, PageID# 658-59; Supp., R.100, PageID# 995.  None of the standing theory adopted by the District Court exists in the complaint.

The District Court was wrong to seize on that unpleaded theory.  The District Court should have only "ask[ed] whether plaintiffs plausibly alleged their standing to sue" "in the complaint," *Nabors*, 35 F.4th at 1031, because OUTMemphis "must

---

[3] OUTMemphis filed the operative complaint on February 1, 2024, and responded to General Skrmetti's motion to dismiss on March 14, 2024.  It filed its response to a notice of supplemental authority on May 21, 2024, citing news reports from the week before.

18

allege in [its] pleadings the facts essential to show jurisdiction," *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  The District Court could not search beyond the pleadings for facts that would "bolster" standing.[4]  *Shields v. Pro. Bureau of Collections of Md., Inc.*, 55 F.4th 823, 829-30 (10th Cir. 2022); *see Rosenwald v. Kimberly-Clark Corp.*, 152 F.4th 1167, 1175 (9th Cir. 2025) (holding in diversity jurisdiction case, "plaintiffs may not avoid pleading jurisdiction by relying on judicial notice").  Nor could it rely on "additional facts . . . that occurred after [the] complaint was filed . . . to retroactively generate standing." *Christian Healthcare Centers, Inc. v. Nessel*, 117 F.4th 826, 849 (6th Cir. 2024).  OUTMemphis's responses to the motion to dismiss could not cure the complaint's pleading deficiencies.

**3.** Even if the District Court could have gone beyond the pleadings and considered materials outside the Complaint, OUTMemphis faces no imminent injury from General Skrmetti.  "[T]hreatened injuries" will give rise to standing only when they are "real, immediate, and direct." *Friends of George's, Inc.*, 108 F.4th at 435. In no way does General Skrmetti's ability to request a pro tem pose a "'certainly

---

[4] A court can consider evidence beyond the pleadings to decide a factual attack on subject-matter jurisdiction, but only when a plaintiff has first alleged a basis for jurisdiction that the defendant attacks with evidence.  *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014).  Where a plaintiff "fails to make the necessary allegations he has no standing." *McNutt*, 298 U.S. at 189.

impending' threat of prosecution." *Id*. (quoting *Crawford v. United States Dep't of the Treasury*, 868 F.3d 438, 454 (6th Cir. 2017)). All he may do is ask the Tennessee Supreme Court to appoint a pro tem if or when a District Attorney refuses to prosecute. Tenn. Code Ann. § 8-7-106(a)(2). Once he asks, the Supreme Court must "find[]" that the District Attorney has "refused to . . . prosecute according to law" and "appoint some other attorney." *Id*. And then that "other attorney" "is entitled to the same privileges" as a District Attorney, *id*., including exercising his own prosecutorial discretion.

This "highly attenuated chain of possibilities" presents only a "highly speculative fear" of enforcement—not a "certainly impending" threat. *Clapper v. Amnesty Intn'l USA*, 568 U.S. 398, 410 (2013). No evidence establishes that *any* of these hypothetical events will happen. There is no evidence that General Skrmetti will request a pro tem. There is no evidence that the Tennessee Supreme Court will approve a pro tem. And there is no evidence that a yet-to-be-named pro tem will, in fact, initiate a prosecution for aggravated prostitution.

The evidence, in fact, shows why OUTMemphis lacks standing. The District Court decided the motion to dismiss two years after OUTMemphis first posited the pro tem theory, Resp., R.67, PageID# 657-58, and nearly a year after the District Attorney's settlement with the United States, Supp., R.100, PageID# 995. Order, R.171. And yet General Skrmetti has never sought appointment of a pro tem. Two

20

years of inaction is a strong "reason to believe" General Skrmetti would not "follow this process and take action." *Contra id*. PageID# 2039. *See Vonderhaar v. Village of Evendale, Ohio*, 906 F.3d 397, 401 (6th Cir. 2018). Because the pro tem theory is unsupported by the complaint, does not present an imminent threat, and is contradicted by the extrinsic evidence (which the District Court should not have considered in the first place), OUTMemphis cannot meet its burden to establish injury in fact.

**4.** OUTMemphis's claimed injury is also not redressable through an order against General Skrmetti. OUTMemphis's "relevant theory of injury" is that its clients could be prosecuted for aggravated prostitution. *Nabors*, 35 F.4th at 1033. "So the corresponding relief would have been either an injunction restraining that proceeding or a declaratory judgment explaining that such a proceeding would be unconstitutional." *Id*. But OUTMemphis cannot get such relief against General Skrmetti because he does not prosecute. And if the district court enjoined him not to ask the Tennessee Supreme Court for a pro tem, it would not diminish the power of the District Attorney to prosecute, Tenn. Code Ann. § 8-7-103(1), or of Tennessee courts to appoint a pro tem to prosecute, Tenn. Const. art. VI, § 5. As this Court observed in *Nabors*, even if a federal court "could somehow 'erase'" the Attorney General's pro-tem-request authority, aggravated prostitution "would *still* be clearlyillegal" and "the district attorneys general would still have the same duty to

21

'prosecute according to law.'" 35 F.4th at 1033 (quoting Tenn. Const. art. IV, § 5). So this suit against Skrmetti cannot redress OUTMemphis's alleged injury. *Cf. Whole Woman's Health v. Jackson*, 595 U.S. 30, 44-45 (2021) (observing that even if "the attorney general did have some enforcement authority," no court could "lawfully enjoin the world at large . . . or purport to enjoin challenged laws themselves" (citation modified)).

At bottom, adopting the District Court's view would upend standing doctrine. To sue General Skrmetti, OUTMemphis must show an injury in fact that is traceable to challenged conduct by Skrmetti and redressable. The mere existence of General Skrmetti's authority to ask a court for the appointment of a pro tem prosecutor under narrow circumstances satisfies none of these requirements. This Court should reverse for lack of standing.

## II.     General Skrmetti Is Entitled to Sovereign Immunity under *Ex parte Young* because he Does Not Enforce the Aggravated Prostitution Statute.

For similar reasons, the District Court was also wrong to conclude that OUTMemphis can evade General Skrmetti's sovereign immunity under *Ex parte Young*. The *Ex parte Young* exception "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996). And as discussed, General Skrmetti has no power to prosecute aggravated prostitution—he has neither enforced nor threatened to enforce the

aggravated prostitution statute. *Supra* at 10-14.  The District Court concluded that OUTMemphis could nevertheless sue General Skrmetti because of his "active role" in the pro tem appointment process that "creates a reasonable risk of prosecutorial action by the attorney general."  Order, R.171, PageID# 2043.  But Skrmetti's authority under the pro tem appointment statute creates no such risk.

General Skremtti is presumed immune from all suits in his official capacity. States enjoy sovereign immunity from suit in federal court.  *Alden v. Maine*, 527 U.S. 706, 713 (1999).  That immunity extends to shield State officials sued in their official capacity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  And it "bars suits for injunctive, declaratory or monetary relief."  *Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023) (internal quotations omitted).  So, under the default rule, OUTMemphis may not sue General Skrmetti.

The *Ex parte Young* doctrine offers a narrow path to circumvent his immunity.[5]  Under that doctrine, a plaintiff may sue officials "clothed with some duty" to "enforce against" him "an unconstitutional act."  *Ex parte Young*, 209 U.S. 123, 156 (1908).  Those suits are viable only because they allege that an official

---

[5] Because of its holding on *Ex parte Young*, the district court found it "need not analyze," Order, R.171, PageID# 2043, the other two paths around sovereign immunity: abrogation and consent, *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017).

23

"use[s] the name of the state to enforce an unconstitutional act." *Id*. at 159. If the allegation is correct, the official is "stripped of his official or representative character" because the "superior authority" of the federal constitution gives the State "no power to impart to him any immunity." *Id*. at 159-60. Thus, *Ex parte Young* excepts some suits against State officials from sovereign immunity's default bar when the suits challenge the validity of a state law.

But that exception is "narrow." *Whole Woman's Health*, 595 U.S. at 39. The official must have a "close official connection with the act" being challenged. *Ex parte Young*, 209 U.S. at 156. He must "threaten and [be] about to commence proceedings" to enforce that act. *Id*. And the plaintiff must identify the "enforcement authority the [official] possesses . . . that a federal court might enjoin him from exercising." *Whole Woman's Health*, 595 U.S. at 43. That requires something more specific than "enjoin[ing] challenged laws themselves." *Id*. at 44 (internal quotations omitted). Federal courts' equitable powers are limited to enjoining an official "from taking specified unlawful actions." *Id*. at 44; *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) ("The doctrine is limited to that precise situation.").

To go any further would erode the "important protection" of sovereign immunity. *Morgan*, 63 F.4th at 517. Without satisfying *Ex parte Young*'s requirements, a plaintiff "is merely making [the official] a party as a representative

24

of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157. "That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law," but it is not "consistent[] with the fundamental principle" of States' immunity. *Id*. So federal courts closely scrutinize complaints invoking *Ex parte Young*.

OUTMemphis's complaint cannot withstand that scrutiny because OUTMemphis cannot show that General Skrmetti is doing or will do something unlawful. To start, the complaint never accuses General Skrmetti of acting in a way that "comes into conflict with the superior authority" of federal law. *Ex parte Young*, 209 U.S. at 159-60. And *Ex parte Young* rejected the notion that "the constitutionality of every act passed by the legislature could be tested by a suit against . . . the attorney general, based upon the theory that the . . . attorney general[] might represent the state in litigation involving the enforcement of its statutes." *Ex parte Young*, 209 U.S. at 157 (quoting *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)). Nothing else in the complaint shows General Skrmetti has "the right and the power to enforce" the aggravated prostitution statute. *Ex parte Young*, 209 U.S. at 161. So he remains immune from suit.

Even OUTMemphis's unpleaded pro tem theory does not help it because nothing about requesting a pro tem violates federal law. *Ex parte Young* only permits suits that challenge "a state official's *action*." *Deters*, 92 F.3d at 1415. Without

25

"specif[ying] unlawful actions" General Skrmetti will take, OUTMemphis cannot tell the federal courts what to enjoin. *Whole Woman's Health*, 595 U.S. at 44. And here, OUTMemphis does not sue "to enjoin [General Skrmetti's] actions on behalf of the state [where *his*] actions" are unlawful. *Nabors*, 35 F.4th at 1040. Instead, it sues to enjoin General Skrmetti's actions where it theorizes that some *other* official's (an appointed pro tem prosecutor's) actions will be unlawful. OUTMemphis never alleges that requesting a pro tem itself violates Title II. So the District Court lacked a basis to enjoin General Skrmetti from doing that.

Likewise, the Attorney General's ability to ask the Supreme Court to appoint someone else to make decisions about prosecutions is hardly an "enforcement mechanism." *Contra*. Order, R. 171, PageID# 2038-39, 2041 (labeling the pro tem statute an "enforcement mechanism"). The pro tem statute recognizes *the Supreme Court's* constitutional authority to ensure District Attorneys attend to their duties. It merely gives the Attorney General a process to notify the Supreme Court of an opportunity to exercise that power. The Attorney General's ability to make the request "is no more than the possible use of persuasion." *Snoeck v. Brussa*, 153 F.3d 984, 987 (9th Cir. 1998). He cannot "issue[] a direct command to district attorneys general to prosecute." *Nabors*, 35 F.4th at 1032. Even if the Tennessee Supreme Court found a request "persuasive," the Attorney General's opinion would not be "binding"; it thus does not "establish sufficient connection with enforcement to

26

satisfy *Ex parte Young*." *Southern Pac. Transp. Co. v. Brown*, 651 F.2d 613, 615 (9th Cir. 1980). Because General Skrmetti cannot "compel or constrain" anyone else to prosecute aggravated prostitution, he is not an "enforcer." *Texas Alliance for Retired Americans v. Scott*, 28 F.4th 669, 673 (5th Cir. 2022) (internal quotations omitted).

In any event, the pro tem theory is too attenuated for *Ex parte Young*, just as it is for standing. Again, that theory depends on General Skrmetti requesting a pro tem (which he has yet to do in the years since moving to dismiss), the Tennessee Supreme Court appointing a pro tem on its own finding that the elected District Attorney has refused to prosecute, and that pro tem prosecuting aggravated prostitution in a manner that injures OUTMemphis. That "is a series of hypotheticals" too long to invoke *Ex parte Young*. *Whole Woman's Health*, 595 U.S. at 44.

Accordingly, the District Court erred by permitting this suit to proceed under *Ex parte Young*. OUTMemphis did not allege that General Skrmetti does anything unlawful, his authority to request a pro tem does not conflict with federal law, and any enforcement by a yet-to-be-requested-and-appointed pro tem is too far downstream from General Skrmetti to make him a proper defendant. This Court should also reverse on the basis of sovereign immunity.

27

## CONCLUSION

The Court should reverse the District Court and remand with instructions to dismiss the remaining claim against General Skrmetti.

Respectfully submitted,

JONATHAN SKRMETTI
 *Attorney General & Reporter*

MADELINE W. CLARK
 *Solicitor General*

*/s/ Cody N. Brandon*
CODY N. BRANDON
 *Deputy Attorney General*

Office of the Tennessee
Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202
Cody.Brandon@ag.tn.gov
(615) 532-7400
 *Counsel for General Skrmetti*

28

**CERTIFICATE OF COMPLIANCE**

This brief complies with the Court's type-volume limitations because it contains 6,074, excluding portions omitted from the Court's required word count.

This brief complies with the Court's typeface requirements because it has been prepared in Microsoft Word using fourteen-point Century Schoolbook font.

*/s/ Cody N. Brandon*
CODY N. BRANDON

## CERTIFICATE OF SERVICE

On June 22, 2026, I filed an electronic copy of this brief with the Clerk of the Sixth Circuit using the CM/ECF system. That system sends a Notice of Docket Activity to all registered attorneys in this case. Under 6 Cir. R. 25(f)(1)(A), "[t]his constitutes service on them and no other service is necessary."

/s/ Cody N. Brandon
CODY N. BRANDON

## DESIGNATION OF RELEVANT DOCUMENTS

The following record documents are relevant to this appeal:

| Document | R. | Page(s) |
|---|---|---|
| Amended Complaint | 62 | 452-561 |
| Memorandum in Support of Motion to Dismiss | 66-1 | 573-637 |
| Response in Opposition to Motion to Dismiss | 67 | 640-712 |
| Reply in Support of Motion to Dismiss | 88 | 864-79 |
| Notice of Supplemental Authority in Support of Motion to Dismiss | 99 | 972-76 |
| Response to Notice of Supplemental Authority | 100 | 994-98 |
| Order Granting in Part and Denying in Part Motion to Dismiss | 171 | 2024-92 |
| Notice of Appeal | 177 | 2105-06 |